# IN THE COURT OF APPEALS OF IOWA

No. 23-1881
Filed January 24, 2024

**IN THE INTEREST OF X.O., G.O. and G.A.,**
**Minor Children,**

**M.E., Mother,**
    Appellant,

**B.O., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam Sauer, District Associate Judge.

A mother and father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**

Sabrina M. Dow, Mason City, for appellant mother.

Michael J. Moeller of Laird Law Firm P.L.C., Clear Lake, for appellant father.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Cameron Michael Sprecher of Sprecher Law Office, P.L.C., Mason City, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Schumacher and Badding, JJ.

**BOWER, Chief Judge.**

A mother and father separately appeal the termination of their parental rights to their children, born in 2021, 2020, and 2012.[1]  Both parents contend the State failed to prove the grounds for termination cited by the juvenile court, termination is not in the children's best interests, a six-month extension would eliminate the grounds for termination, and the court should apply a permissive exception to preclude termination.  Upon our review, we affirm both appeals.

## I.    *Background Facts and Proceedings*

This family came to the attention of the department of health and human ervices (the department) in December 2021, when X.O. was born testing positive for illegal substances.  The mother, who has "a history [of] involvement with the department for substance use," admitted using methamphetamine and marijuana during the pregnancy.  Over the next few months, the parents missed drug tests and did not participate in services consistently.  In May 2022, the department learned "remnants of a meth lab and drug paraphernalia" were found in the residence from which the parents were recently evicted.  Hair samples collected from X.O. and G.O. tested positive for methamphetamine.  The children were removed from the parents' custody, adjudicated in need of assistance, and placed with a maternal aunt.

Due to a lack of meaningful progress by either parent over more than one year, the State initiated termination-of-parental-rights proceedings in June 2023.

---

[1] The mother appeals the termination of her parental rights to all three children. The father appeals the termination of his parental rights to his two children, G.O. and X.O.  The parental rights of the father of G.A. were previously terminated.

The hearing took place in September 2023. The guardian ad litem and department recommended termination of parental rights.

At the time of the hearing, the children had been placed with their maternal aunt outside of the parents' custody for fifteen months. Since the department's initial involvement in December 2021, the parents inconsistently attended substance-abuse and mental-health treatment, denied substance use, missed drug tests, and continued to use methamphetamine. The mother testified she last used illegal substances in the "beginning of August" and admitted she had not participated in drug tests the past few months because she was concerned she would test positive. The father testified he had not participated in drug testing for "quite some time" because he didn't have transportation or he "was in the middle of working." He admitted, however, a caseworker offered him transportation to test for "this last one," which he didn't attend.

The court entered an order terminating parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2023) as to G.A. and section 232.116(1)(h) as to X.O. and G.O. The mother and father separately appeal.

## II. *Standard of Review*

We review termination-of-parental-rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Upon our review, our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

### III. Discussion

#### A. Grounds for Termination

The mother and father both challenge the evidence supporting the grounds for termination cited by the juvenile court.[2] They claim the State failed to show by clear and convincing evidence that the children could not be returned safely to their custody at the time of the termination hearing. *See* Iowa Code §§ 232.116(1)(h)(4), (f)(4).

The parents had short periods of progress, including in early 2023 when they started unsupervised visits. Unfortunately, visits changed back to fully supervised one week later when they tested positive for methamphetamine. Neither parent demonstrated sobriety for any length of time. As the caseworker summed it up, "There's been multiple attempts by both parents to do inpatient, outpatient services," but "[t]here's been no sobriety that can be proven. They haven't followed through."

Specifically, regarding the father, the caseworker observed he had "[n]ot address[ed] his methamphetamine use." As she explained, "He'll deny, deny, deny. He doesn't take accountability that he actually uses; and then there will be a moment where all of a sudden okay, yeah, I used." At the termination hearing, when asked "when is the last time that [he] used illegal substances," the father responded, "the end of January," but then he clarified, "Since February 8, yeah. The 7th is when I had a [test] came back that was on the record that was dirty, so

---

[2] Although both parents challenge the evidence under Iowa Code section 232.116(1)(e), we need only find termination proper under one ground to affirm. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

that's why I just started after the 8th because, you know, that was my last known record date." But the caseworker contradicted the father's testimony, stating the father admitted "he had used the end of June" and discussed his use again in July. Regardless, the caseworker testified, "I have no drug tests on him for I believe it's been roughly a year."

The mother's situation was no better. She stated her longest period of sobriety was "107 days." She agreed she struggled to stay sober during this proceeding and she "would go one step forward, one step back, two steps forward, one step back just consistently." The caseworker agreed the mother's engagement in services was "inconsistent" and culminated in the mother "stopp[ing] drug testing the last couple months." At the termination hearing, the mother testified she used methamphetamine the prior month and consumed alcohol "yesterday." The mother informed caseworkers "there was no point to continue drug testing, that she was drinking pretty regularly . . . and she was not willing to disclose how much she was drinking because it would be used against her." And although alcohol was not an initial concern of the department, the caseworker explained, "It wasn't the initial concern; but somebody who uses substances, shouldn't be using any substances if they're going to be working on sobriety." The caseworker further stated, "My concern is that she's still using."

Based on these and other facts replete in the record (including unaddressed domestic-violence and mental-health concerns), we agree with the court's finding the children could not be returned to the custody of either parent at the time of the termination hearing. Iowa Code section 232.116(1)(f) and (h) was satisfied.

*B.      Best Interests*

Termination also must serve the children's best interests.  *See* Iowa Code § 232.116(2).   The father admitted he had "been kind of slacking on [his] permanency" in terms of his ability to "meet [the children's] basic needs of shelter, clothing, food."  And although the mother had an appropriate home, the department had concerns about her "mental health, substance abuse, [and] the hostile co-parenting if [the parents] were to be left unsupervised."  The caseworker believed "it's more harmful to the children to continue down this path."  She explained:

> [E]very time we get close to a Court hearing, they do a last ditch effort to try to get signed up for something, to be able to, you know, say we're doing something; but then there's been no follow through after every hearing.  And so I don't foresee that pattern is going to change given that we're at termination and they were well aware that this could have been an outcome.

In assessing the best interests of these children, we must look at their long-range as well as immediate interests.  *See In re K.F.*, 437 N.W.2d 559, 560 (Iowa 1989).  "This requires considering what the future holds for the child[ren] if returned to the parents."  *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997).  When making this decision, we look to the parents' past performance because it may indicate the quality of care they are capable of providing in the future.  *Id.*  The juvenile court found "the child[ren]'s safety, and best opportunity for furthering the child[ren]'s long-term nurturing and growth, as well as the physical, mental and emotional condition and needs of the child[ren] support termination of parental rights."  Upon our review, we agree termination is in the children's best interests.

*C.    Six-Month Extension*

The mother and father each claim if they are granted a six-month extension, the grounds for termination would no longer exist. The termination hearing was initially scheduled to take place in August but was continued for one month. Neither parent used that amount of additional time to show the progress they promised at the hearing. Instead, they "d[id]n't respond" to "drug testing directions," which implied they were continuing to use illegal substances. *See In re D.G.*, No. 20-0587, 2020 WL 4499773, at *4 (Iowa Ct. App. Aug. 5, 2020) ("We presume those tests . . . would have resulted in positive tests."). And neither parent participated in substance-abuse or mental-health treatment. As the guardian ad litem opined:

> I understand the position of both mother and father and wanting to have an additional six months or having a guardianship put into place for the children, and it's just hard for me to agree with that due to the fact that there's—there's no finite evidence showing that [the father] is sober or has been sober for the last six to eight months. I'm not doubting that he is or if he isn't; obviously, we do have steps put into place such as drug testing to confirm that for us and it was testified today that the tests were asked for and never followed through with. So there's no finite evidence to show that his testimony stating he was or has been sober since that February 7 date is accurate.
>     And mother did testify she did last use illegal substances roughly a month and a half, two months ago; and I do believe there was alcohol that was used yesterday. It's just hard when throughout this case they were making such great progress and that stopped and it didn't progress [past] that. The children do need permanency and I do think the best permanency option right now would be termination and placement with [the maternal aunt].

To grant an extension of time for reunification, the court must "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the children will be able to return to the parent at the end of the

additional six months. Iowa Code § 232.104(2)(b). On this record, the court had no basis on which to grant an extension.

### D. Exceptions to Termination

Once the State has proven grounds for termination, the burden shifts to the parent to prove a permissive exception under section 232.116(3). *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). The parents both claim the closeness of the parent-child bond should prompt the court to apply an exception to termination. *See* Iowa Code § 232.116(3)(c). Although caseworkers agreed the parents "do have a good bond with their children," as one noted, the children "have now resided with [the maternal aunt] for over a year and for [G.O] and [X.O.] alone that's essentially their whole life or half their life and they are connected with [the maternal aunt], she is family to them." Application of the exception under paragraph (c) "requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)). Neither parent established termination of their parental rights will be detrimental to the children.

The father also claims the children's "long-term placement" with a relative, "specifically, their maternal aunt," eliminates the need for termination. *See* Iowa Code § 232.116(3)(a) (stating that the court need not terminate parental rights if "[a] relative has legal custody of the child"). These children need and deserve permanency, and under these circumstances, continued placement with the maternal aunt, even under a guardianship, will not provide it. We decline to apply the permissive exception in section 232.116(3)(a) to preclude termination.

Having addressed the issues raised on the parents' appeals, we affirm the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**